UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOSHUA HOLMAN, | |
| Plaintiff, | |
| v. | Case No. 4:22-cv-4133-NKL |
| ALI INDUSTRIES, LLC., | |
| Defendants. | |

**ORDER**

Defendant Ali Industries, Inc. moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint by plaintiff Joshua Holman for failure to state a claim and to dismiss or strike Plaintiff's request for a nationwide class. For the reasons discussed below, the Court grants in part and denies in part Ali's motion to dismiss, and denies as moot the motion to strike the request for a nationwide class.

I. FACTUAL ALLEGATIONS AND BACKGROUND

Ali is engaged in the business of "testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling" Gator-branded bonded abrasive wheels (the "Products"). Doc. 1-1, Petition ¶ 4. The Products, when attached to power tools such as angle grinders or chop saws, are used to cut metal and concrete. *Id.*, ¶ 11. Holman purchased one or more of the Products within the past five years. *Id.*, ¶ 6.

Holman alleges that it is industry standard for manufacturers of abrasive wheels to include an expiration date of three years from the date of manufacture, and that Ali knew that the Products would expire after three years. . *Id.*, ¶¶ 13–14. Nonetheless, Ali did not place an expiration date on the Products, allegedly "creat[ing] an unreasonable risk of [the Products'] giving way, cracking,

1

Case 2:22-cv-04133-NKL   Document 30   Filed 02/01/23   Page 1 of 18

splitting, exploding, failing, and harming customers" without warning. *Id.*, ¶ 13.

Holman brought claims of a violation of the Missouri Merchandising Practice Act ("MMPA") (Count I), unjust enrichment (Count II), strict liability design defect (Count III), strict liability failure to warn (Count IV), negligence (Count V), and breach of implied warranty (Count VI). *Id.*

## II. STANDARD ON MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, ordinarily, the complaint "does not need detailed factual allegations," just "enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, . . . but [is] not bound to accept as true threadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quotation marks and citations omitted).

## III. DISCUSSION

### A. Whether Plaintiff Established Article III Standing to Bring His Claims

This is the unusual case in which the plaintiff, rather than the defendant, has raised the question of standing. Holman argues that, insofar as the Court concludes that he has failed to allege a manifest defect in the Products, he shall not have suffered an injury in fact and would lack standing, and the Court must remand the case to state court for lack of subject matter jurisdiction

rather than dismissing it for failure to state a claim.

Federal courts have jurisdiction over only "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quotation marks and citation omitted). The Court is not permitted to consider a case unless the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338. The plaintiff bears the burden of establishing that he has standing. *Id.*

An injury in fact is one that is (a) concrete and particularized, and (b) actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "In the Eighth Circuit, to demonstrate Article III standing and more specifically an injury in fact in [a products liability] lawsuit, plaintiffs must show a manifest defect in the product they purchased." *Tuter v. Freud Am., Inc.*, No. 4:22-CV-00282-RK, 2022 WL 4636225, at *3 (W.D. Mo. Sept. 30, 2022) (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)).

### i. Injury in Fact in Connection with Products Holman Purchased

Holman alleges that he purchased one or more of the Products while unaware that, when used as reasonably anticipated, the Products "give[] way, crack[], split[], explode[], and fail" after their "shelf life." Doc. 1-1, Petition ¶ 6. Holman has alleged not only a *risk* of failure, but a manifest defect in the product that he purchased that inevitably will result in failure. Indeed, because there is no expiration date on the products, it is possible that the products expired before Holman purchased them. Holman's allegations are sufficient to confer standing at this stage. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) ("[T]he homeowners do not argue that the fittings merely 'risk' developing SCC. They allege that SCC afflicts all of the fittings upon use, regardless of water conditions or installation practices. As they have put it, SCC 'is already manifest in all systems.' . . . Given this evidence, the district court did not err in

3

determining that the dry plaintiffs were not 'no injury' parties simply because their plumbing systems had not yet leaked."); *Tuter*, 2022 WL 4636225, at *5 ("Plaintiff has not just pleaded that the Diablo abrasive wheels are at a risk or merely have a likelihood or propensity to fail . . . . Rather, Plaintiff has set forth factual allegations (even if only generally) that *when* the abrasive wheels reach their expiration date, they *will* fail (i.e., by giving way, cracking, splitting, and exploding) . . . . Thus, the Court finds Plaintiff has alleged a sufficient particularized and actual injury-in-fact at this juncture to demonstrate Article III standing in the context of this products liability lawsuit." (quotation marks and citation omitted)). While ultimately there may be a question as to whether Holman will be able to convince a reasonable factfinder that the Products did not remain effective for more than three years from the date of manufacture, that question is not ripe at this stage of the litigation. Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Holman, as the Court must upon a motion to dismiss, the Court concludes that Holman has alleged an injury in fact.

### B. Whether Plaintiff Has Stated an MMPA Claim

The MMPA permits civil claims by "[a]ny person who purchases . . . merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 . . . ." Mo. Rev. Stat. § 407.025.1. Section 407.020 provides a private right of action for "'deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.'" *Hays v. Nissan N. Am., Inc.*, No. 4:17-CV-00353-BCW, 2021 WL 912262, at *6 (W.D. Mo. Mar. 8, 2021) (quoting Mo. Rev. Stat. § 407.020.1). "'A plaintiff claiming omission of material fact under the MMPA must show the defendant failed to disclose material facts that

were "known to [it], or upon reasonable inquiry would [have been] known to [it].""" *Rawa*, 2017 WL 3392090, at *5 (quoting *White v. Just Born, Inc.*, No. 2:17-CV-04025-C-NKL, 2017 WL 3130333, at *8 (W.D. Mo. July 21, 2017)).

### i. Applicability of the Rule 9(b) Heightened Pleading Standard

Ali argues that Holman did not plead the MMPA claim with sufficient particularity under Federal Rule of Civil Procedure 9(b). Ordinarily, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, Rule 9(b) requires that "the circumstances constituting fraud or mistake" be stated "with particularity . . . ." Fed. R. Civ. P. 9(b).

Holman argues that Rule 9(b) does not apply to his claim under the MMPA, and that, even if it does apply, his pleadings satisfy the 9(b) standard. In support of his position, Holman cites *Muhammad v. Pub. Storage Co.*, No. 14-0246-CV-W-ODS, 2014 WL 3687328, at *4 (W.D. Mo. July 24, 2014), which concluded that Rule 9(b) did not apply to the plaintiff's MMPA claim because it was not based on fraud. However, in that case, the unfair trade practice was breach of contract, not omission of material facts. *See id.* at *4 ("In this case, the Court concludes Plaintiffs are not asserting a fraud-based claim. They contend, essentially, that Defendant committed an unfair trade practice by breaching the contract. Because this is not a fraud-based claim, Rule 9's heightened pleading requirements do not apply.").

Where, as here, an MMPA claim is based on alleged omission of material facts, courts have held that Rule 9(b)'s heightened pleading standard applies. *See, e.g., Craggs v. Fast Lane Car Wash & Lube, LLC*, 402 F. Supp. 3d 605, 611 (W.D. Mo. Aug. 9, 2019) (noting that "numerous district judges in Missouri have held that Rule 9(b) applies to MMPA claims, particularly those that . . . are fraud-like in that they are based on misrepresentations and omissions" (citing cases)); *Elfaridi v. Mercedes-Benz USA, LLC*, No. 4:16 CV 1896 CDP, 2018 WL 4071155, at *4 (E.D.

5

Mo. Aug. 27, 2018) (applying heightened pleading standard of Rule 9(b) "[w]here the MMPA claim concerns an *omission* of a material fact and not an affirmative misrepresentation"). The Court accordingly concludes that the heightened pleading standard of Rule 9(b) applies to Holman's MMPA claim. *See Tuter*, 2022 WL 4636225, at *7 (holding that Plaintiff's assertion that "Defendant violated the MMPA as to the sale, distribution, and advertisement of the Diablo abrasive wheels by failing to include a clear expiration date," despite knowing that using the wheels after their expiration date created a "dangerous condition," constituted "a fraud-based claim to which Rule 9(b)'s heightened pleading requirement applies" (quotation marks and citation omitted)).

### ii. Whether Holman's MMPA Allegations Satisfy the Rule 9(b) Standard

For an MMPA claim based on omission of a material fact, to satisfy Rule 9(b), a plaintiff "must allege with specificity the time and place of the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby." *Elfaridi*, 2018 WL 4071155, at *4.

Holman has alleged that:

> At the time of Defendant's design, manufacture, processing, distribution, sale and/or use of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date.

Doc. 1-1, Petition ¶ 42. Similarly, Holman has alleged:

> Defendant failed to disclose, concealed, reveal [*sic*], or otherwise provide notice to consumers, including Plaintiff, in Defendant's advertising, packaging, labeling or otherwise that these products were defective and that the products are not fit for the

> ordinary purposes for which the products are used in that, when used as reasonably anticipated, the Defective Product gives way, cracks, splits, explodes and fails.
>
> Defendant knew the shelf life of the Defective Product would expire without notice to a reasonable customer and thereby created an unreasonable risk of giving way, cracking, splitting, exploding, failing, and harming customers, yet it failed to warn Plaintiff and all other similarly situated customers about this risk.

*Id.*, ¶¶ 12-13. Thus, Plaintiff has alleged the time and place (during and in the design, manufacturing, labeling and/or packaging), the content omitted (the expiration date), the identity of the person who omitted it (Ali as a company—as this case does not involve a fraudulent misrepresentation, Plaintiff cannot be expected to be more specific at this stage in the litigation),[1] and what was obtained or given up thereby (Plaintiff paid for a product that he thought would last indefinitely but received a product that lasts only three years from manufacture—which time period might have passed before Plaintiff purchased the product—and Plaintiff consequently is at risk of using a product that will crack, split or explode). *See Hammack v. Harbor Freight Tools USA, Inc.*, No. 22-CV-00312-SRB, 2022 WL 14225017, at *2 (W.D. Mo. Oct. 24, 2022) ("Upon review of the second amended complaint, Plaintiffs have sufficiently alleged facts satisfying Rule 9(b)'s heightened requirements. Plaintiffs allege (1) the 'who' is Defendant; (2) the 'what' is the product labels; (3) the 'where' is the products themselves; (4) the 'when' is June 7, 2020–June 7, 2022; (5) the 'how' is the representations or omissions regarding the quality or shelf-life of the products."); *Tuter*, 2022 WL 4636225, at **9–10 ("Plaintiff's MMPA claim satisfies the federal

---

[1] *See Owen v. Gen. Motors Corp.*, No. 06-4067 CV NKL, 2006 WL 2808632, at *8 (W.D. Mo. Sept. 28, 2006) ("The basis of the Owens's MMPA claim is a material omission . . . . It is clear from the Complaint precisely what information the Owens allege GM omitted and/or concealed. That is sufficient to satisfy the particularity requirements of Rule 9 in this case. Requiring the Owens to plead with particularity which agent of GM omitted the material information and precisely where and when the omission occurred would put the Owens in the untenable position of having to plead a negative.").

pleading standard under Rules 8 and 9(b) to the extent Plaintiff alleges Defendant violated the MMPA by its alleged omission or concealment of the material fact that the Diablo bonded abrasive wheels had a shelf-life or expiration date."). This is more than sufficient under the heightened pleading standard of Rule 9(b). *See Owen v. Gen. Motors Corp.*, No. 06-4067 CV NKL, 2006 WL 2808632, at *8 (W.D. Mo. Sept. 28, 2006) ("It is clear from the Complaint precisely what information the [plaintiffs] allege [defendant company] omitted and/or concealed. That is sufficient to satisfy the particularity requirements of Rule 9 in this case.").

Ali's argument that Holman's vague assertion that he bought the relevant Products within the previous five years is not sufficiently particular under Rule 9(b) is not persuasive. The focus of the particularity requirement of Rule 9(b) is on *Defendant's* alleged conduct. *See, e.g., Tuter*, 2022 WL 4636225, at *9 ("The focus of an MMPA claim 'is on the defendant's conduct,' not the plaintiff's." (citing *White*, 2017 WL 3130333, at *3)). Holman therefore need not plead the date of his purchase with more particularity than Rule 8 typically requires, and his pleading satisfies that lower standard.

### iii. Whether Holman Has Stated an MMPA Claim

Ali also argues that Plaintiff's MMPA claim should be dismissed for failure to state a claim because he has failed to allege a manifested defect. Plaintiff, however, contends that he has alleged an ascertainable loss under the benefit-of-the-bargain rule.

The benefit-of-the-bargain rule permits recovery when a product is worth less in actuality than as represented. *See Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 972 (W.D. Mo. 2021) ("Regarding an MMPA claim, a plaintiff adequately pleads if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction.'") (quotation marks omitted, citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016)). Here,
8

Holman alleges that Ali knew or should have known and concealed that the Products have an expiration date of three years from manufacture, and the Products therefore are less valuable than Ali represented them to be. This is sufficient to state an MMPA claim under benefit-of-the-bargain rule. *See Tuter*, 2022 WL 4636225, at *10 ("Plaintiff alleges that the Diablo abrasive wheels, which do not contain an expiration date or shelf-life date on them, crack, split, explode, and fail if used after having reached their expiration or shelf-life date. Plaintiff has sufficiently alleged an ascertainable loss under the MMPA . . . . and that the alleged loss was the result of the packaging which did not contain an expiration or shelf-life date."); *see also Murphy*, 503 S.W.3d at 313 (holding that plaintiff who alleged that cake mix was not "all natural" as represented had stated an MMPA claim under the benefit-of-the-bargain rule because the mix allegedly "was worth less than the product as represented"); *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 711 and 715 (Mo. App. 2009) (denying motion to dismiss MMPA claim alleging that drug was worth less than as represented because defendant "fail[ed] to disclose and actively conceal[ed] the drug's risks," holding that plaintiffs "stated an objectively ascertainable loss under the MMPA using the benefit of the bargain rule"); *cf. Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) (dismissing MMPA claim upon concluding that "Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages" (quotation marks and citation omitted)).

Ali next argues that Holman failed to allege that he purchased the Products for personal or household use. However, he alleged that he is a member of the proposed class, and that proposed class consists only of people who purchased the Products for personal, family, or household purposes. Doc. 1-1, Petition ¶ 20(b), 27. Therefore, drawing all reasonable inferences in his favor, as required upon a motion to dismiss, the Court finds that Holman has alleged that he purchased

9

Case 2:22-cv-04133-NKL    Document 30    Filed 02/01/23    Page 9 of 18

the Products for personal or household use.

### iv. Whether Holman Has Stated a Claim with Respect to Products He Did Not Purchase

Ali argues that Holman cannot assert MMPA claims with regard to products that he personally did not purchase. Holman counters that class actions may be brought with respect to products similar to one the named plaintiff purchased, so long as the claims are substantially similar.

Ali cites *Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090, at *5 (E.D. Mo. Aug. 7, 2017), to argue that "Plaintiff may not bring a claim under the MMPA for products he did not purchase." That case discussed standing to bring claims under the MMPA, citing *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015), which held that a consumer who had not purchased twelve of sixteen varieties of chips could not maintain an MMPA action with respect to the varieties she had not purchased because "she was neither personally nor actually harmed as to those twelve varieties." Some other federal district court decisions similarly have concluded that a plaintiff does not have standing to assert an MMPA claim with respect to a product the plaintiff did not himself purchase. *See Drew v. Lance Camper Mfg. Corp.*, No. 3:21-CV-05066-RK, 2021 WL 5441512, at *7 (W.D. Mo. Nov. 19, 2021); *Smith v. Atkins Nutritionals, Inc.*, No. 2:18-CV-04004-MDH, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018) (same). The court in *Goldman v. Tapestry, Inc.*, however, reached the opposite conclusion. *See* 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020) ("I agree with the district courts that have concluded plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as 'the products and alleged misrepresentations are substantially similar.'" (citing *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 541 (S.D.N.Y. 2013); *Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970, 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020); *In re Vizio, Inc., Consumer Privacy*

*Litig.*, 238 F.Supp.3d 1204, 1218 (C.D. Cal. 2017)).

None of the foregoing cases, however, discussed the relevant statutory language.[2] The language of the MMPA does not suggest that a class claim must be limited to the particular product that a plaintiff purchased. To the contrary, the statutory section concerning class claims turns not on the product purchased, but on the "unlawful method, act or practice" at issue:

> 5. Persons entitled to bring an action pursuant to subsection 1 of this section may, *if the unlawful method, act or practice has caused similar injury to numerous other persons*, institute an action as representative or representatives of a class against one or more defendants as representatives of a class, and the petition shall allege such facts as will show that these persons or the named defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class, to recover damages as provided for in subsection 1 of this section. The plaintiff shall be required to prove such allegations, unless all of the members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance. The class representative or representatives shall establish:
>
> (1) That the representative or representatives acted as a reasonable consumer would in light of all circumstances;
>
> (2) *That the method, act, or practice declared unlawful by section 407.020* would cause a reasonable person to enter into the transaction that resulted in damages; and
>
> (3) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat. 407.025.5 (emphasis added). The Court reads this language to mean that, so long as the allegedly unlawful method or practice is the same, the products at issue need not be identical. Thus, Holman's allegation that Ali "failed to disclose, concealed, reveal, or otherwise provide notice to consumers, including Plaintiff, in Defendant's advertising, packaging, labeling or

---

[2] While the Court in *Rawa* predicted that the Missouri Supreme Court, which it acknowledged had not addressed the issue, "would hold that Plaintiff may not bring a claim under the MMPA for products he did not purchase," it did so without discussion of the MMPA's provisions.

otherwise that these products were defective and that the products are not fit for the ordinary purposes for which the products are used in that, when used as reasonably anticipated, the Defective Product gives way, cracks, splits, explodes and fails," is sufficient to state a claim with respect to the alleged practice, regardless of which particular products Holman himself purchased.

> C. **Whether The Claim for Unjust Enrichment Should be Dismissed in Light of the Economic Loss Rule**

Ali argues that the economic loss doctrine bars recovery on Holman's claim for unjust enrichment. "The economic loss doctrine bars recovery of purely pecuniary losses in certain tort cases if there is no personal injury or physical damage to property other than the property at issue in the case—usually an allegedly defective product in a products liability case." *In re Genetically Modified Rice Litig.,* 666 F. Supp. 2d 1004, 1015 (E.D. Mo. 2009). Here, there is no allegation of personal injury or physical damage to any property other than the Products themselves. Accordingly, the economic loss doctrine bars Holman's unjust-enrichment claim.

Holman argues that the economic loss doctrine does not apply here because the claims fall outside of the Uniform Commercial Code, citing *Pearlstone v. Costco Wholesale Corp.,* No. 4:18CV630 RLW, 2019 WL 764708 (E.D. Mo. Feb. 21, 2019). In *Pearlstone*, the court rejected the defendant's economic-loss argument because it concluded that the Uniform Commercial Code did not apply. *Id.*, at *4 n.5. The transaction in that case involved a service—membership in the wholesale club—and not the sale of goods. Here, however, the transaction at issue involved the sale of goods. Holman does not suggest otherwise. The Court thus cannot but conclude that the UCC applies. *See Steven T. Huff LLC v. Monarch Cement Co.*, No. 15-03214-CV-S-BP, 2017 WL 10506793, at *2 (W.D. Mo. June 19, 2017) (noting that "Article Two of the UCC applies . . . to contracts for the sale of goods") (citing Mo. Rev. Stat. § 400.2-102).

Holman next contends that the economic loss doctrine applies only to *commercial*, and not

12

Case 2:22-cv-04133-NKL   Document 30   Filed 02/01/23   Page 12 of 18

*consumer*, buyers of goods. Holman cites *Browning*, 539 F. Supp. 3d at 965, in support of his position. However, the Eighth Circuit case on which the economic-loss analysis in *Browning* primarily relies, *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902 (8th Cir. 2013), does not support the proposition that the economic-loss doctrine can be invoked against only *commercial* counterparties. First, *Dannix* involved a transaction between commercial parties, and therefore it does not hold that the economic loss doctrine does not apply to consumer transactions. *Id.* at 904. Second, insofar as *Dannix* distinguishes between "commercial contracting parties" and "consumers," it does so only in quoting a Seventh Circuit case applying Wisconsin law. *Id.* at 908 (citing *All–Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 865–66 (7th Cir.1999)). Nothing else in *Dannix* suggests that a different standard applies in cases involving consumer, rather than commercial, counterparties.

Further, *Browning* did not concern an unjust enrichment claim. *Browning*, 539 F. Supp. 3d at 973–74.

More notably still, the judge that decided *Browning* concluded in a more recent case that the economic-loss doctrine barred a *consumer's* unjust enrichment claim. *See Hammack*, 2022 WL 14225017, at *4 ("Here, the only loss sustained by Plaintiffs as alleged in their complaint is a purely economic loss that is fundamentally based on an alleged defect in the Products. Accordingly, Plaintiffs' Missouri-based claim for unjust enrichment is barred by the economic loss doctrine and dismissed."); *see also id.* at *1 (noting that "Plaintiffs[] are consumers").

The Court agrees with the conclusion in *Tuter* that, on the whole, "Missouri courts have not delineated a commercial-consumer distinction in the economic loss doctrine, and have applied the economic loss doctrine without regard to whether the plaintiff-purchaser was a 'consumer' or a 'commercial' party." *Tuter*, 2022 WL 4636225, at *12 (citing *Acol v. Travers Autoplex & RV,*

*Inc.*, 637 S.W.3d 415, 421-22 (Mo. Ct. App. 2021); *Sharp Bros. Contracting v. Am. Hoist & Derrick Co.*, 714 S.W.2d 919, 920 (Mo. Ct. App. 1986)).

As no exception to the economic-loss doctrine applies, the claim for unjust enrichment (Count II) must be dismissed with prejudice.[3]

### D. Whether Plaintiff Has Stated a Claim for Breach of Implied Warranty

To state a claim for breach of implied warranty, Holman must allege "'(1) that a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to plaintiff or his property, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury.'" *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (quoting *Ragland Mills, Inc. v. General Motors Corp.,* 763 S.W.2d 357, 360 (Mo. Ct. App. 1989)). Ali argues that Holman has failed to allege that the Products were merchantable and that he was injured by the defective nature of the goods. Ali also argues that Holman failed to provide the requisite notice.

#### i. Whether the Allegations Plausibly Suggest that the Products Were Not Merchantable

Ali argues that Plaintiff's claim for breach of implied warranty must be dismissed because the Products were merchantable. Merchantable goods are those that "at least":

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

---

[3] Ali moved to dismiss Holman's negligence and strict-liability claims on the basis of the economic-loss doctrine as well. In response, Holman stated that he no longer wishes to pursue those claims and requested that they be dismissed without prejudice. Doc. 22, p. 22. Accordingly, Counts III, IV, and V will be dismissed without prejudice.

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Mo. Rev. Stat. § 400.2-314(2). Additionally, "implied warranties may arise from course of dealing or usage of trade." Mo. Rev. Stat. § 400.2-314(3).

Holman argues that he has pleaded that the product was "defective" and that this is sufficient to plead breach of implied warranty. However, a defect in a product that makes it less valuable does not necessarily make it unmerchantable. For example, "[w]ith regard to automobiles, the implied warranty of merchantability can only be breached when the 'vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation.'" *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135, 1148 (W.D. Mo. 2021) (quoting *Williams v. United Techs. Corp.*, No.15-04144-NKL, 2015 WL 7738370, at *6 (W.D. Mo. Nov. 30, 2015)). In other words, to be deemed unmerchantable, a defect must leave a product unfit for the purpose for which it was designed.

Moreover, the focus of the merchantability inquiry is on the product *at the time of purchase*. If the Products might no longer be suited for their purpose three years after they are purchased, that would not render them unmerchantable at the time of sale. However, in this case, Holman has alleged facts sufficient to plausibly suggest that, because Ali did not include an expiration date on the Products, the Products were already three or more years old, and therefore unfit for use—in other words, not merchantable—when Holman purchased them. As such, Holman has pleaded sufficient facts to plausibly suggest that the Products were not merchantable.

### ii. Whether Plaintiff Provided the Required Notice

There is still a question as to whether Holman provided the notice required to state a claim for implied breach of warranty. The complaint and the material referenced therein indicate that the purported notice of the implied breach of warranty claim—which Holman argues was provided through the complaint itself and through a preservation letter—was not provided before the complaint was filed. *See* Doc. 1-1, Petition (showing filing date of August 8, 2022); *id.*, ¶ 77 ("Defendant was provided notice by receipt of demand made by Plaintiff on behalf of himself and the putative class through the filing of this Complaint and through the mailing of a preservation letter."); Doc. 18-2 (preservation letter dated August 8, 2022).

The relevant statute does not specify whether notice must be provided before commencement of a suit asserting a claim for breach of the implied warranty of merchantability. *See* Mo. Rev. Stat. § 400.2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). Holman argues that pre-suit notice is not required. However, this Court has interpreted the statute to require notice before the filing of an action for breach of implied warranty. *See Budach v. NIBCO, Inc.*, No. 2:14-CV-04324-NKL, 2015 WL 6870145, at *4 (W.D. Mo. Nov. 6, 2015) ("[T]he Court concludes that a plaintiff must provide some minimal pre-suit notice of breach in order to assert a warranty claim under Section 2-607(3)(a) of the U.C.C. and Section 400.2-607(3)(a)) of Missouri's commercial code."). This Court's analysis in *Budach* has been adopted elsewhere. *See Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1348 (E.D. Mo. 2020) ("Other district courts—both in th[e Eastern] District and the Western District of Missouri—have since agreed that the Missouri Supreme Court would follow this majority view and require that reasonable notice must be provided pre-suit."; *id.* at 1349 ("After consideration, the Court is persuaded by Judge Laughrey's analysis and agrees that Missouri would require pre-suit notice of

the breach of warranty claim."). Requiring pre-lawsuit notice is consistent with the legislative history and purpose (to encourage cure or settlement and provide notice for preservation of evidence). *Id.*

Holman argues that he was not under an obligation to give Ali notice of his claim because notice must be provided to only the intermediate seller. But Holman does not argue, nor do the pleadings suggest, that he gave such notice to the seller before filing the complaint.

Because this Court has concluded that notice of a breach of implied warranty must be provided prior to commencement of the litigation, *see Budach*, 2015 WL 6870145, at *4, and the pleadings, including the materials incorporated or referenced therein, indicate that Holman did not provide any pre-litigation notice as required, the claim for breach of implied warranty (Count VI) must be dismissed, though without prejudice.

### E. Motion to Strike

Because the Court is dismissing Holman's claims for unjust enrichment and breach of implied warranty, Ali's motion to strike Holman's requests for certification of nationwide unjust-enrichment and implied-warranty classes is moot.

### IV. CONCLUSION

For the reasons discussed above, Ali's Motion to Dismiss, Doc. 17, is GRANTED in part and DENIED in part. Count II is DISMISSED with prejudice. Counts III, IV, V, and VI are DISMISSED without prejudice. The motion to dismiss or to strike the request for a nationwide class is DENIED AS MOOT. The motion to dismiss for failure to state a claim otherwise is denied. Holman may, within 30 days, amend the complaint to include allegations concerning notice to cure

his claim for breach of implied warranty.

Dated: February 1, 2023  
Jefferson City, Missouri

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge